Detwiler v. Schultheis.

Filed Feb. 18, 1890.

———————

No. 13,180.

DETWILER v. SCHULTHEIS.

QUIETING TITLE.—Cross-Complaint.—Sufficiency of.—In a suit to recover the possession of real estate, a cross-complaint alleges a good cause of action to quiet the title to said real estate which avers, among other things, that the cross-complainant is the owner of said real estate, and has been in possession thereof for fifteen years, and has made valuable improvements thereon, etc.; that the said real estate had been levied upon to satisfy an execution in favor of the plaintiff against the cross-complainant's grantor upon a judgment long before rendered; that the cross-complainant was about to institute an injunction proceeding to prevent the sale of said real estate under said execution, when he was assured by the execution plaintiff and his attorney that he need not pay any attention to said sale; that it was not his intention to purchase or disturb the cross-complainant's title; that he would bid off the land at a nominal sum merely to get it out of the way; that this was only to enable the sheriff to legally sell other valuable tracts of real estate which he desired to have sold; that he need not trouble himself to redeem from said sale; that relying upon said promises the cross-complainant permitted the land, which was of the value $6,000, to be sold

for the nominal sum of $1, and did not redeem from said sale; that the purchaser secured a sheriff's deed for the said real estate, and was proclaiming publicly that he was the owner of the same.

SAME.—*Statute of Frauds.—Non-Application of.*—The statute of frauds has no application to-the cause of action alleged in the above paragraph of cross-complaint. The cross-complaint does not seek to enforce a contract for the sale of real estate. The theory of the pleading is, that the cross-complainant is the owner of the real estate, and holds the legal title thereto, and that the plaintiff is asserting a claim thereto, and the demand is that the cross-complainant's title to the land be quieted.

SAME.—*Cross-Complainant's Right of Action.— When it Accrued.—Negligence in Assertion of Rights.*—As long as the plaintiff made no claim to the real estate, and permitted the cross-complainant to occupy it undisturbed, the latter had no right of action. It was not until the plaintiff asserted title, and instituted proceedings to recover the land, that it became necessary for the cross-complainant to ask that his title be quieted. Under the facts set forth the cross-complainant was not guilty of negligence in the assertion of his rights.

SAME.—*Redemption Law.—Statute of Limitations.*—The cause of action set forth in the second paragraph of cross-complaint, is not to redeem from the sheriff's sale, but to quiet title. The redemption law has no possible application in such a case. The *gravamen* of the action is to quiet title to real estate, and not to enforce a parol contract, or for relief against fraud. The six years' period of limitation does not apply. The period of limitation in such a case is fifteen years.

From the Marshall Circuit Court.

*J. D. McLaren* and *L. M. Lauer*, for appellant.

*M. A. O. Packard* and *O. M. Packard*, for appellee.

BERKSHIRE, J.—The appellant was the plaintiff below; his complaint was in the ordinary form for the recovery of possession of real property.

The appellee filed a general denial to the complaint, and a cross-complaint, consisting of four paragraphs.

For reasons which will hereafter appear, it only becomes necessary for us to consider the second paragraph of the cross-complaint and the answers filed thereto.

The appellant filed three paragraphs of answer to the second paragraph of the cross-complaint, the general denial, that the cause of action did not accrue within six years, and

that it did not accrue within one year before the commencement of the action. To the two affirmative paragraphs the court sustained demurrers, and the appellant reserved proper exceptions.

The issues joined were submitted to the court, and after hearing the evidence the court found for the appellee and against the appellant upon the issues formed upon the complaint and the second paragraph of the cross-complaint. There was no finding as to the other paragraphs of the cross-complaint, and, over a motion for a new trial, the court rendered judgment upon its finding for the appellee.

There are many errors assigned, all of which are waived by the appellant, except those which relate to the rulings of the court in overruling the demurrer to the second paragraph of the cross-complaint, the sustaining of the demurrers to the two affirmative paragraphs of answer, and in overruling the motion for a new trial.

There are several reasons assigned in the motion for a new trial, but appellant only calls our attention to two of them ; that the finding of the court is contrary to the evidence, and contrary to law.

The second paragraph of cross-complaint alleges, in substance the following state of facts :

That the appellee is the owner of the real estate in controversy (describing it), and has been for fifteen years, and during the said period of time has been in possession thereof; that he has made large and valuable improvements thereon, and paid all taxes and other assessments against said property; that the said real estate is now of the value of six thousand dollars, and when the appellee purchased it it was of the value of but two thousand dollars ; that the appellee derived title from one Peter Schlosh ; that the appellant is setting up and asserting title to said real estate adverse to the appellee, is giving out in public speeches that he is the owner of said real estate, and has instituted an action in the Marshall Circuit Court to recover the possession thereof; that after

the appellee had purchased the said real estate and paid the full consideration therefor, his grantor, the said Peter Schlosh, became insolvent, and so continued until his death; that, on the 4th day of June, 1869, the appellant recovered a judgment in the said Marshall Circuit Court against the said Schlosh for the sum of $2,000; that said judgment was a judgment for the foreclosure of a chattel mortgage, and that there was no personal judgment over against the said Schlosh; that at the time of the rendition of said judgment, and thereafter, the said Schlosh was the owner of sundry pieces of real property in the said county of Marshall, altogether of the value of $10,000; that, on the 9th day of April, 1879, nearly ten years after the rendition of said judgment, the appellant sued out an execution on said judgment and directed and caused the same to be levied upon all of the different tracts and parcels of real estate to which the said Schlosh held title at the date on which said judgment was rendered, and thereafter at any time before the issuing of said execution, including the said real estate so belonging to the appellee, and caused the same to be advertised for sale on the said execution; that said Schlosh had sold and conveyed each and all of said pieces and parcels of property before the said execution issued; that the appellee was about to institute proceedings to enjoin said sale as to his said real estate when the appellant, in person and by his attorney and agent transacting the said business for him, came to the appellee and informed him that he need pay no attention to said sale, that it was not the intention of the appellant to purchase or disturb appellee's title; that the appellant would bid it off at a nominal sum merely to get it out of the way, inasmuch as he had to have the real estate levied upon sold in the inverse order from that in which the said Schlosh had conveyed it; that for this reason only had the appellee's property been levied upon and advertised for sale; that this was necessary to enable the sheriff to legally sell other valuable tracts of said real estate which the appellant desired to have

sold; that the appellant knew that the appellee could enjoin said sale and defeat his right to acquire any title to the appellee's said real estate; and if he would not enjoin said sale the appellant would bid off the appellee's said real estate at a nominal sum to get it out of the way, but it would not, and should not be treated as a sale, and that the appellee need not trouble himself to redeem therefrom; that the appellee relied upon the promises and agreement thus made by the appellant, and permitted his said real estate to be sold without objection, and did not thereafter redeem from said sale, although the said real estate was purchased for the nominal sum of $1; that the appellant and his agent and attorney knew during all the time that the appellee was relying upon the said promises and agreement so made; that said sale was made on the 17th day of May, 1879; that at the time of said sale the said real estate was of the value of $6,000.

We are of the opinion that this paragraph of cross-complaint states a good cause of action to quiet title. The demurrer admits the truth of the facts alleged.

If the facts alleged are true, the appellee was threatening to institute proceedings to enjoin the execution sale, and had sufficient legal grounds upon which to maintain successfully such proceedings; the appellant knowing and conceding as much, and only claiming that his judgment was nominally a lien on the appellee's real estate, but believing that it was necessary that the sheriff sell it first and before offering other parcels or tracts, from the sale of which the appellant expected to realize the amount due on his judgment, he promised and agreed with the appellee that if he would not institute proceedings to enjoin, he (the appellant) would buy in the appellee's real estate, at a nominal sum, but as between them the purchase should not be regarded as a sale, and that the appellee need not give himself any concern about the matter and need not redeem from the sale; that the appellee relied upon the agreement and promise of the appellant, and did

not institute proceedings to enjoin the sale ; that the appellant bid in the property for the nominal sum of $1 ; that the appellee still relying upon the promise and agreement of the appellant, let the time of redemption under the statute go by, and thereafter is confronted with an action by the appellant to recover the real estate as the legal owner thereof.

To permit the appellant to assert title to the said real estate under the circumstances averred would be to allow him to perpetrate a most palpable and glaring fraud.

Equity and good conscience will not allow such gross injustice as would follow if the appellant were permitted to assert his title under the circumstances alleged.

Counsel on neither side have furnished us with any authority to sustain their respective contentions, and yet there is no want of authority from this as well as other courts touching the questions involved.

In the case of *Stone* v. *Lewman*, 28 Ind. 97, the learned judge who delivered the opinion says : " The fourth paragraph of the answer, a demurrer to which was overruled, alleged that the judgment sued on had been obtained in the defendant's absence and without his personal knowledge, by the plaintiff's fraudulent suppression of the facts, upon an account which had been fully satisfied ; that the defendant returned to this State, within a year from the rendition of the judgment, and being about to commence proceedings to be relieved against it, of which the plaintiff had notice, the latter promised to enter satisfaction of the judgment, in consideration that the defendant would not prosecute proceedings for relief, and would not press the collection of a demand held by him against the plaintiff, which the defendant promised and faithfully performed, relying upon the plaintiff to enter satisfaction of the judgment, which he supposed had been done until served with process in this suit, too late, under the statute to institute proceedings for relief against the judgment. We perceive no error in overruling the demurrer to this defence. If its averments be true, the collection

of the judgment would now be a gross fraud upon the defendant, which can not find countenance in the law. All the conditions of an estoppel appear."

In the case of *Johnson* v. *Unversaw*, 30 Ind. 435, the facts alleged are very similar to the facts alleged in *Stone* v. *Lewman, supra,* but the question arose on a demurrer to the complaint. GREGORY, J., delivered the opinion of the court, and said : " The appellee was prevented from making his defence, and also from making his motion within the time allowed by law, to set aside the judgment for ' mistake, inadvertence, surprise or excusable neglect ' by the fraudulent device of the intestate, and thereby he was, and the appellants as his administrators are, estopped from enforcing it." *Nealis* v. *Dicks,* 72 Ind. 374, and *Sanders* v. *State,* 85 Ind. 318, approve the cases *supra. Benton* v. *Shreeve,* 4 Ind. 66 ; *Swope* v. *Ardery,* 5 Ind. 213 ; *Dawson* v. *Jackson,* 62 Ind. 171 ; *Hogg* v. *Link,* 90 Ind. 346, are to the same effect. See Freeman Judgments, section 492; *Blakesley* v. *Johnson,* 13 Wis. 592 ; Pomeroy Eq. Jur., sections 918, 919.

As the consideration paid by the appellant was merely nominal, the maxim " he who seeks equity must do equity " has no application.

The statute of frauds has no application to the cause of action alleged in the second paragraph of the cross-complaint ; the appellee is not thereby seeking to enforce a contract for the sale of real estate. The theory of the pleading is that the appellee is the owner of the real estate, and holds the legal title thereto, and that the appellant is asserting a claim thereto, and the demand is that the appellee's title to the land be quieted.

It is urged, also, that the appellee having been guilty of negligence in the assertion of his rights, he is, for that reason, not entitled to the relief demanded in his cross-complaint. But so long as the appellant made no claim to the property, and permitted the appellee to occupy it, undis-

turbed, he had no right of action; it was not until the appellant asserted title, and instituted proceedings to recover the land that it became necessary for the appellee to ask that his title be quieted.

In *Johnson* v. *Unversaw, supra,* the learned judge says : " The appellants have cited no authority, but they contend that the appellee has lost his remedy (if he ever had one) by gross neglect, in delaying ten years to assert his right.    By the allegations of the complaint the intestate never attempted to enforce the judgment; on the contrary, he repeatedly asserted that it was, as to the appellee, released and satisfied. The administrators have no right to complain of a delay caused by their intestate."

It may be said of the appellant, that he has no cause to complain of delay caused by his own inaction.

The fifth paragraph of answer, which is in the nature of a plea of the statute of limitations, was clearly bad.    The period of limitation alleged is one year, and it is contended that the appellee was bound to redeem within one year from the day of sale; and, at most, within one year from the date of the sheriff's deed to the appellant.

This not being an action to redeem, but to quiet title, the redemption law can have no possible application. See *Lynch* v. *Reese,* 97 Ind. 360.

The fourth paragraph of answer was a plea of the statute of limitations, alleging that the cause of action did not accrue within a period of six years before the commencement of the cross-action.

The *gravamen* of the action is to quiet title to real estate, and not to enforce a parol contract, or for relief against fraud ; therefore, the six years' period of limitation does not apply.    Fraud may be, and, in fact, is, an incident to the cause of action alleged in the complaint, but that is all.

If the cross-action was one to set aside the sheriff's deed to the appellant on the ground of fraud, then a different question would be presented.

The period of limitation applicable to a cause of action like the one alleged in the second paragraph of the cross-complaint, is fifteen years. *Eve* v. *Louis*, 91 Ind. 457 ; *Vanduyn* v. *Hepner*, 45 Ind. 589 (598); *Caress* v. *Foster*, 62 Ind. 145.

We come, lastly, to the evidence in the case. It is a well-settled rule of this court that where there is evidence to support the finding of the court or jury trying the cause, this court will not disturb such finding or verdict.

The evidence does not make as strong a case for the appellee as is made by the averments in his cross-complaint. It fails to show that he had any understanding or agreement with the appellant, in person ; but, notwithstanding, we think the evidence is sufficient to support the finding of the court.

A. C. Capron testified as a witness for the appellee, and stated that he was the attorney for the appellant and ordered the execution upon which the appellee's real estate and other parcels of real estate were sold ; that the appellant came to Plymouth and they made a schedule of all the real estate owned by Schlosh at and after the judgment was rendered, none of which was owned by him when the execution issued ; when the schedule was made out they put on it the figures proper to bid on each tract, which footed up the full amount due on the execution ; that the witness informed the appellant that the appellee's property was incumbered by mortgage and other liens, when he bought it, for more than its value, and that the appellee's money had paid off those liens, and that Schlosh had practically nothing in the property, and that they would be compelled to make their money out of other property, to which the appellant agreed, and $1 was fixed as the amount to be bid on the appellee's said property. A short time before the sale the appellee went to the witness' office and he informed the appellee that the judgment of the appellant was a lien on all the real estate owned by Schlosh at its rendition, but that as far as his property

Detwiler v. Schultheis.

was concerned, they were only going to sell it to get at the other property, and that he need give himself no uneasiness about it; that they were never going to take out a deed or certificate of sale; the appellant told the witness he wanted nothing out of it, and the witness so informed the appellee; that the appellee seemed to be uneasy and came to see the witness the second time, and he again assured him that he need not worry about it, that they expected to get the bulk of the money out of the Knowlton land; witness further told the appellee that he need not give the matter any further attention. The bulk of the money was made out of the Knowlton land.

Before the appellant took his sheriff's deed the witness informed him that it would be a fraud on the appellee to take a deed for his property. The first that the witness knew that the appellant contemplated taking a sheriff's deed was at a time when the appellant's son came to Plymouth after the year of redemption had expired.

The appellee testified as a witness in his own behalf, and corroborated the witness Capron as to the agreement and understanding between them as to the sale; that the property at the date of the sale was worth about $6,000; that the witness never heard of the appellee's intention to claim the property until after he had taken the sheriff's deed.

The evidence shows that the property was bid in for $1, and that that was the consideration named in the sheriff's deed.

From this evidence the court might conclude that the appellant and his attorney regarded the interest of the judgment debtor in appellee's property at the date of the judgment and thereafter as of nominal value, but that it was desirable to bid it in that other real estate upon which the execution had been levied might be sold, from the sale of which they expected to realize the amount due on the execution, and that they finally concluded to bid for the appellee's said real estate the nominal sum of $1, and that they re-

garded the purchase of no other importance than to enable them to proceed with the sale of the other real estate; and that after this arrangement the said attorney informed the appellee and assured him that he could rest easy, and need give the matter no further attention, and that the appellee acted upon the understanding which he had with the attorney. That he relied upon what was stated by the attorney there can be no question, else he would not have permitted his property, worth $6,000, to be sold by the sheriff for the nominal sum of $1, and the year of redemption to pass by without some effort to protect his rights and interest in the said property.

We are not prepared to say that it was not in the line of the attorney's employment after he and his client had reached the conclusion above stated, for him to say to the appellee just what he did say; his client's interests could not be prejudiced thereby, and if the appellee could thus be kept quiet and prevented from taking steps to enjoin the sale, it would certainly be to the appellant's advantage.

In *Graffam* v. *Burgess*, 117 U. S. 180 (188), the court says: "It is true that Fairfield's declarations ought not to be used against Graffam except when made by him in the course of his business as Graffam's attorney. It is in this point of view that they have been noticed." The declarations of Fairfield were made under circumstances very much in line with the statements made by Capron to the appellee. But whether this is so or not, the attorney acting for the appellant did make the promises, as he has testified, the appellee relied upon them, and thereby the appellant was enabled to obtain a sheriff's deed to property worth $6,000 for the nominal sum of $1. Although it appears that the attorney, Mr. Capron, acted in good faith, the conduct of his client afterwards in taking a deed from the sheriff for the property, and his effort thereafter to recover its possession from the appellee was a fraud not to be tolerated, and renders the sale ab-

Detwiler *v.* Schultheis.

solutely void, and estops the appellant from setting up title to the said property.   Authorities, *supra.*

In the case of *Graffam* v. *Burgess, supra* (192), the court says : " From the cases here cited we may draw the general conclusion that, if the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property, or party interested in it, has been for any other reason, misled or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold.   Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud."

On page 194 of the same volume and in the same opinion, the court says : " Some technical objections, however, have been raised.   It is said that it was error in the court to allow the amendment to redeem.   We see no error in this. The case as set out in the original bill was one either for annulling the sheriff's sale and decreeing an unconditional delivery of the property, or for a redemption on payment of the amount due."

We make the following quotation from *Fletcher* v. *McGill,* 110 Ind. 395 :   " Conceding the rule to be that a sheriff's sale will not be set aside for mere inadequacy of price, yet if the inadequacy be so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of unfairness, or if the owner of the property has for any reason been misled or surprised, the sale will be regarded as fraudulent and the party injured will be permitted to redeem.   As was said in *Graffam* v. *Burgess,* 117 U. S. 180 (192), ' Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefited by the sale to raise the presumption of fraud.' "

The case of *Fletcher* v. *McGill, supra,* was an action to set

aside the sale made by the sheriff, but is an authority in the case under consideration.    *Wright* v. *Dick,* 116 Ind. 538.

In this case there were no equities to adjust. The sale was for a nominal consideration only; the appellant bid but a nominal price, because he did not regard his judgment debtor as having any interest of value in the property, to which his judgment attached as a lien; he did not bid in the property with a view of acquiring any interest therein, but simply as a matter of convenience, that he might have other property sold on which his execution had been levied, and out of which he expected to realize the amount due on the execution, and which he succeeded in doing.

Under the circumstances, for this or any other court to hold that the appellant acquired any interest in, or title to, the real estate in question, would be a judicial outrage.

The judgment is affirmed, with costs.

